**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **INTEGON NATIONAL INSURANCE COMPANY,** | **1:18-cv-01192-LJO-JLT** |
| **Plaintiff; Counter-Defendants,** | **MEMORANDUM DECISION AND ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |
| **v.** | |
| **BILLY REECE; AMBER REECE; AND C.N,** *a minor, by and through his guardian ad litem Callie Nielsen*, | **(ECF Nos. 24, 25)** |
| **Defendants; Counter-Claimants.** | |

## I. INTRODUCTION

This is an insurance coverage dispute between Plaintiff Integon National Insurance Company ("Integon") and Defendants Billy Reece, Amber Reece (the "Reeces"), and C.N., a minor, by and through his guardian ad-litem Callie Nielsen ("C.N.") (collectively "Defendants"). The dispute concerns coverage for claims asserted against the Reeces by C.N. in an action filed in March 2018 and currently pending in California Superior Court for the County of Kern. On September 4, 2018, Integon brought this diversity jurisdiction action pursuant to 28 U.S.C. § 1332 against the Reeces, and also named C.N., who is the plaintiff in the state court action. ECF No. 1. Integon alleges one claim against Defendants seeking declaratory relief, asking the Court to find that Integon has no duty to defend and no duty to indemnify the Reeces in the state court action based on the homeowner's insurance policy's motor vehicle exclusion. The Reeces filed a counterclaim for (1) declaratory relief as to whether the state court action against the Reeces is covered by the policy and whether Integon is required to provide them with independent

counsel at Integon's expense; (2) for breach of written contract; and (3) for breach of the covenant of good faith and fair dealing. ECF No. 11.

On July 8, 2019, Integon and the Reeces both filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 24-25. Oppositions were filed on July 22, 2019. ECF No. 5.[1] Replies were filed on July 29, 2019. ECF Nos. 29-30. The issue presented on these summary judgment motions is whether a motor vehicle exclusion in the Reeces' homeowner's insurance policy excludes coverage for the Reeces' liability in the underlying state court litigation. Additionally, the Reeces claim they are entitled to summary judgment on the issue of whether Integon should be required to pay for independent counsel in the state court action. The Court finds it appropriate to rule on the motions without oral argument. *See* Local Rule 230(g). Having considered the parties' briefing and the relevant law, the Court issues the following order.

## II. **FACTUAL BACKGROUND**

The parties agree on all material facts as submitted in the joint statement of undisputed facts. ECF No. 25-3, ("UMF").[2]

On March 28, 2018, C.N. filed a complaint in Kern County Superior Court, Case No. BCV-18-100719, in connection with injuries that C.N. suffered in an accident involving a golf cart owned by the Reeces (the "Underlying Action" or "C.N. Action"). UMF 14; ECF No. 11 at Ex. B. The Underlying Action alleges that on December 22, 2017, C.N. was injured when he fell off the golf cart that was driven by K.R.,[3] an unlicensed minor. UMF 17. K.R. is the Reeces' niece. UMF 47(d). The Underlying Action alleges various causes of action against the Reeces including that they:

- "did negligently and carelessly own, rent, lease, bail, operate, control, repair, maintain and entrust" the golf cart
- "did negligently and carelessly fail to properly supervise, protect, and control minor

---

[1] C.N. filed a statement of non-opposition to the Reeces' motion for summary judgment. ECF No. 28.
[2] C.N. joined in the statement of undisputed facts. ECF No. 25-3.
[3] Multiple filings by both parties reference two minors' names in full – C.N. and K.R. This ignores the requirements of Federal Rule of Civil Procedure 5.2(a)(3) and Local Rule 140(a)(i). The Court will separately issue an order addressing the use of the minors' full names throughout the record.

children at [the Property], including [C.N.], by providing Defendant, [K.R.], an unlicensed minor, with [the golf cart]."

- were negligent in "allowing and permitting [K.R.], an unlicensed minor, to operate [the golf cart] on a public roadway with other minor children as passengers, including [C.N.]."
- "had actual and/or constructive knowledge, and knew and/or reasonably should have known, that Defendant, [K.R.], an unlicensed minor, would not and could not safely drive, operate, control, possess, and manage [the golf cart] on a public roadway, and negligently and carelessly failed to prevent Defendant, [K.R.], from operating [the golf cart] with minor passengers on a public roadway."
- were negligent in failing to prevent an unlicensed minor from operating the golf cart in violation of Vehicle Code §12500(a)
- were negligent in failing comply with Vehicle Code §27360.5 by ensuring C.N. was transported in the golf cart using appropriate child passenger restraint system or safety belt
- were negligent in failing to register the golf cart in violation of Vehicle Code §§4000 and 21251.

UMF 18-24. C.N. alleges that he suffered damages resulting from the accident in the amount of $20,000,000. UMF 25.

Integon issued a homeowner's insurance policy to the Reeces, Policy No. 2004464223, effective for the policy period December 19, 2017 to December 19, 2018 ("Integon Policy" or the "Policy"). UMF 5; ECF No. 11, Ex. A. The Policy was in effect on the date of the subject accident and all premiums were paid. UMF 9-10. The Policy has personal liability limits of $300,000 per occurrence and $5,000, for medical payments to others. ECF No. 11, Ex. B at 12.[4] The Policy's "Coverage E" provides personal liability coverage "[i]f a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." UMF 34; ECF No. 11, Ex. B at 69. The Policy's "Coverage F" provides coverage for medical payments to others when the medical expenses are "incurred or medically ascertained within three years from the date of an accident causing 'bodily injury.'" UMF 35; ECF No. 11, Ex. B at 69. As it pertains to Coverage E and F, the Policy has an exclusion for "Motor Vehicle Liability." *Id.*; UMF 36. "Motor Vehicle Liability" is defined under the Policy as:

Liability for "bodily injury" or "property damage" arising out of the:

---

[4] Pin cites to page numbers refer to the ECF-generated pagination in the upper right-hand corner of the document.

(1) Ownership of such vehicle or craft by an "insured";

(2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

(3) Entrustment of such vehicle or craft by an "insured" to any person;

(4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

(5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

UMF 28; ECF No. 11, Ex. B at 55.

The motor vehicle exclusion under Section II – A.1 in part states that:

Coverages **E** [personal liability] and **F** [medical payments to others] do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":
  a. Is registered for use on public roads or property;
  b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the 'occurrence'; …

UMF 36; ECF No. 11, Ex. B at 69.

The Policy further provides under Section II – A.2 that:

If Exclusion A.1. does not apply, there is still no coverage for 'motor vehicle liability' unless the 'motor vehicle' is:"
  a. In dead storage on an "insured location";
  b. Used to service an "insured's" residence;
  c. Designed to assist the handicapped and, at the time of an "occurrence", it is:
        (1) Being used to assist a handicapped person; or
        (2) Parked on an "insured location";
  d**. Designed for recreational use off public roads and:**
        (1) Not owned by an "insured"; or
        (2) **Owned by an "insured" provided the "occurrence" takes place on an "insured location" as defined in Definitions B. 6.a., b., d., e. or h**.; or
  e. A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons, not built or modified after manufacture to exceed speed of 25 miles per hour on level ground and, at the time of the "occurrence", is within the legal boundaries of a golfing facility and is parked or stored there, or being used by an "insured" to:
        (1) Play the game of golf or for other recreational or leisure activity allowed by the facility;
        (2) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or
        (3) Cross public roads at designated points to access other parts of the golfing facility.

UMF 36; ECF No. 11, Ex. B at 69-70 (emphasis added).[5]

---

[5] Exception "e." was replaced by an endorsement that is largely the same but slightly broader. *See* UMF 37. Since the parties

Billy and Amber Reece are the named insureds under the Policy. UMF 5. The Reeces are also the owners of a single-family residence located at 9362 Brunello Court in Bakersfield, California, which is the "insured location" under the Policy terms. UMF 3, 6. As defined in the Policy, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage'." UMF 33; ECF No. 11, Ex. B at 56. The parties agree that the alleged injuries suffered by C.N. constitute "bodily injury" as defined in the Policy. UMF 7. The parties also agree that the golf cart involved in the underlying action is a "motor vehicle" as defined in the Policy. UMF 8.

In March 2018, Integon initially denied coverage for the Reeces' claim for coverage under the Policy exclusion for motor vehicle liability and refused to defend or indemnify the Reeces in the C.N. Action. UMF 40-42. A few months later, the Reeces insisted Integon reevaluate its coverage position and demanded that Integon defend and indemnify them in Underlying Action since the Reeces' conduct giving rise to potential liability occurred at their Property, i.e. an "insured location." UMF 43. Several months after Integon's initial denial, the Reeces indicated that Integon should reconsider its refusal to defend, pointing to *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 225 (2018), *as modified* (July 25, 2018), as support for their position of where the "occurrence" took place. UMF 45. On August 6, 2018, Integon advised the Reeces that it would defend them in the C.N. Action subject to a reservation of rights. UMF 46.

Integon then filed this action for declaratory relief and is now seeking summary adjudication on the ground that there is no potential for insurance coverage under the homeowner's policy it issued to the Reeces, and correspondingly seeking a judicial declaration that it has no duty to defend or indemnify the Reeces in the Underlying Action. ECF No. 24. The Reeces counterclaimed for declaratory relief, breach

---

do not appear to contend that the latter exception has any applicability to the facts of this case, the Court does not address it further.

5

of contract, and breach of the covenant of good faith and fair dealing. They also cross moved for summary judgment claiming an exception to the motor vehicle liability exclusion applies such that coverage exists for the C.N. Action. ECF No. 25.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

# IV. DISCUSSION

The dispute before the Court on the cross motions for summary judgment is whether the claim made by C.N. against the Reeces in the Underlying Action is covered by the Reeces' homeowner's insurance policy issued by Integon. The dispute revolves around whether the motor vehicle liability exclusion applies to the Underlying Action or whether an exception to the exclusion applies such that there is coverage under the Policy. Integon claims that the motor vehicle liability exclusion in the Policy applies to preclude coverage for the C.N. Action and that no exception to the exclusion applies. ECF No. 24-1; ECF No. 26. In their motion for summary judgment, the Reeces claim that Integon erroneously relies on the motor vehicle liability exclusion to deny the Reeces' coverage for the Underlying Action. ECF No. 25-1 at 12. The Reeces argue that an exception to the motor vehicle liability exclusion applies such that coverage is not precluded. *Id.* at 15. In particular, they argue that the exception which provides that there is coverage for motor vehicle liability when the motor vehicle is "[d]esigned for recreational use off public roads" and "[o]wned by an 'insured' provided the 'occurrence' takes place on an 'insured location'. . . ." applies. UMF 36; ECF No. 25-1 at 12-15. Hence, the coverage issue in this case turns in part on the legal interpretation of where the "occurrence" took place. Integon submits that the "occurrence" which C.N. seeks to hold the Reeces liable for took place on a public roadway, where the golf cart accident occurred according to the complaint in the Underlying Action. ECF No. 24-1 at 5; ECF No. 26 at 2. The Reeces on the other hand contend that the Reeces' negligent conduct – i.e. their negligent ownership, entrustment, and supervision of K.R. in use of the golf cart – was the "occurrence" which took place on the "insured location." As such, they argue their conduct is excepted from the motor vehicle liability exclusion under Section II.A.2.d.(2) and Integon has a duty to defend and indemnify them for the C.N. Action under the Policy. ECF No. 25-1 at 15-18; ECF No. 27 at 13-17.

In addition, the Reeces' motion also seeks a determination of whether they are entitled to independent counsel in the Underlying Action since they claim that Integon created a disqualifying conflict of interest by filing a declaratory relief action against them. ECF No. 25-1 at 3-4, 20-22.

7

1    The Court first addresses the issue of coverage before addressing the issue of whether the Reeces

2    are entitled to independent counsel.

3    **A.    AUTO EXCLUSION AND EXCEPTION TO EXCLUSION**

4    "Motor Vehicle Liability" is broadly defined under the Policy to include claims involving bodily

5    injury arising out of the ownership, maintenance, operation, and use, of such a motor vehicle and the

6    definition explicitly includes bodily injury arising out of the entrustment of such vehicle to any person,

7    failure to supervise or negligent supervision of any person involving such vehicle, or vicarious liability

8    for the actions of a child or minor involving such vehicle.  UMF 28; ECF NO. 11, Ex. B at 55. There is

9    no dispute that the golf cart involved in the accident on December 22, 2017 is a motor vehicle under the

10   Policy or that it is designed for recreational use off public roads. UMF 4, 8. Nor do the Reeces seem to

11   dispute that the motor vehicle liability exclusion would exclude coverage unless an exception applied.

12   ECF No. 25-1 at 15, 18; ECF No. 27 at 13. The only dispute between the parties appears to be one of

13   Policy interpretation. The main policy interpretation question is whether the exception to the motor

14   vehicle exclusion in Section II.A.2.d.(2) applies to the undisputed facts of this case such that coverage

15   exists for the Underlying Action despite the use of a motor vehicle and despite the motor vehicle liability

16   exclusion. A secondary argument the Reeces make is that their negligent supervision was a concurrent

17   cause of the motor vehicle accident such that there would be coverage under the holding in *State Farm*

18   *Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94 (1973), and its progeny. The coverage question at issue

19   in this case turns on the legal interpretation of the Policy language in the exception to the motor vehicle

20   exclusion and case law interpreting such exclusions.

21   The Court briefly discusses the general principles of contract interpretation in the insurance

22   context before addressing the interpretation of the Policy language.

23   **1.    Principles of Contract Interpretation**

24   As an initial matter, jurisdiction in this case is based upon diversity, and both parties agree that

25   the interpretation of the subject insurance policy is governed by the law of the State of California. *See*

8

*Continental Insurance Co. v. Metro-Goldwyn-Mayer, Inc.*, 107 F.3d 1344, 1346 (9th Cir. 1997) (applying California insurance law in diversity case).

"Interpretation of a contract is a purely legal question…" *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004) (citing *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003) (interpretation of a contract is a pure question of law)). Under California law, insurance policies are also contracts which can be interpreted as a matter of law, including the resolution of any ambiguity. *Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) ("Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation").

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties" which should be inferred solely from the written provisions of the contract if possible. *MacKinnon*, 31 Cal. 4th at 647. "If contractual language is clear and explicit, it governs." *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993), *as modified* (Sept. 21, 1993) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)); *see also* Cal. Civ. Code, § 1638. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949-50 (9th Cir. 2002) (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)) (citations omitted). "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins. Corp.*, 76 F. Supp. 3d at 879 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of

the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 19.

However, if contract language is considered ambiguous it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. *AIU Ins. Co.*, 51 Cal. 3d at 822; Cal. Civ. Code § 1649. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist, i.e. the insurer in insurance contracts. *Id.* (citing Cal. Civ. Code § 1654). "In the insurance context, we generally resolve ambiguities in favor of coverage." *Id.* "Coverage clauses are interpreted broadly so as to afford the greatest protection to the insured, while exclusion clauses are interpreted narrowly." *TBG, Inc. v. Commercial Union Ins. Co.*, 806 F. Supp. 1444, 1446 (N.D. Cal. 1990); *Mosten Mgmt. Co. v. Zurich-Am. Ins. Grp.*, No. C-89-3475 SBA, 1992 WL 685749, at *7 (N.D. Cal. June 19, 1992) ("[I]t has long been the law in California that coverage clauses are broadly construed so as to afford the greatest possible protection to the insured and exclusionary clauses are interpreted narrowly against the insurer.").

"In the insurance context, we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks omitted). To be effective, an "exclusionary clause must be 'conspicuous, plain and clear.'" *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 273 (1966) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 878 (1962)). However, "[i]t must be kept in mind that an insurer is free to select the character of the risk it will assume" and an insurer "has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280 (1977) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.* 46 Cal. 2d 423, 432 (1956)).

### 2.     An Insurer's Duty To Defend

The duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.*, 4

Cal. 4th 1076, 1081 (1993). It is a well-accepted rule that "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy . . . ." *State Farm Mut. Auto. Ins. Co. v. Longden*, 197 Cal. App. 3d 226, 233 (1987) (quoting *Gray*, 65 Cal. 2d at 275) (emphasis in original). "Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires us to interpret the language of the insuring agreement and is a question of law." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 508 (2001); *see also Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 847 F. Supp. 1460, 1466 (N.D. Cal.), *opinion amended on reconsideration*, 875 F. Supp. 656 (N.D. Cal. 1994) ("Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue amenable to resolution on summary judgment.") "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Waller*, 11 Cal. 4th at 19.

"[T]o be entitled to a defense, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Barnett*, 90 Cal. App. 4th at 508 (internal quotation omitted). Although the duty to defend is broad, it "is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal. 4th at 19. "[T]he insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 297 (1993). When the question of coverage can be determined as a matter of law on undisputed facts, an insurer may seek adjudication that "no potential for liability exists and thus that it has no duty to defend." *Id.* at 298. The "[c]ritical question" is whether the undisputed facts "conclusively eliminate a potential for liability." *Id.* at 298-99.

### 3. <u>Interpretation of Motor Vehicle Liability Exclusion in Integon's Policy</u>

The material facts are not disputed by the parties. Integon argues that the motor vehicle liability exclusion in the Policy excludes coverage for the Underlying Action and thus it has no duty to defend,

and correspondingly no duty to indemnify the Reeces. ECF No. 24-1 at 9-11; ECF No. 26 at 3-6. The Reeces argue that an exception to the motor vehicle liability exclusion under Section II.A.2.d.(2) applies and Integon has a duty to defend and indemnify them in the C.N. Action. ECF No. 25-1 at 12-15. They also make a secondary argument that there are concurrent causes of the liability producing injury, auto-related and non-auto related, and thus coverage for non-auto related conduct exists based on the reasoning in *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94 (1973). *Id.* at 16-18.

### a. *"Insured Location" Exception to The Exclusion*[6]

The exception at issue in this case in pertinent part provides that the motor vehicle liability exclusion does not apply if the "motor vehicle" is "[d]esigned for recreational use off public roads and . . . [o]wned by an 'insured' provided the 'occurrence' takes place on an 'insured location'…." ECF No. 11 at 69-70. There is no dispute that the golf cart involved in the accident meets the "designed for recreational use off public roads" requirement or that it was owned by the Reeces. UMF 4, 8. The question remains whether the "occurrence" took place on an "insured location." The parties agree that the Property in Bakersfield is an "insured location." UMF 3, 6. As indicated above "occurrence" is defined in the Policy as "an accident . . . which results, during the policy period, in . . . [b]odily injury; or …[p]roperty damage." UMF 33; ECF No. 11, Ex. B at 56. The complaint in the Underlying Action alleges that the accident involving the golf cart injuring C.N. took place on a public roadway, and the Reeces do not contest the fact that the golf cart accident took place on a public roadway. ECF No. 11 at 111-113; UMF 20, 21. At the core of the motions is the following legal issue: whether under California law, an "occurrence," as the term is used in liability insurance policies, takes place where the claimant in the underlying action is injured or where the insured committed his or her negligent act.

The Reeces' argument that the "occurrence" took place at an "insured location" amounts to the

---

[6] The Reeces make no indication that any of the other exceptions in the Policy are potentially relevant to the facts here and thus the Court does address the other exceptions.

argument that an "occurrence" takes place at the location where their alleged negligent conduct took place. Their argument assumes that they were at their home in Bakersfield—i.e. an insured location—when their negligent supervision occurred. The only support the Reece's provide for this argument is the California Supreme Court's decision in *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216 (2018), *as modified* (July 25, 2018). In *Liberty*, the court decided whether there was coverage under a school contractor's commercial general liability policy for claims of negligent hiring, retention, and supervision of the contractor's employee who was alleged to have sexually abused a student while at the school on a job site. *Id.* at 220. The question before the court was whether a third-party suit against an employer for negligence in hiring and supervising an employee who intentionally injured that third party alleged an "occurrence" under the employer's commercial general liability policy. *Id.* The question turned on whether the injury could be considered "accidental." *Id.* At 222-23. The policy in that case, similarly to the one here, provided coverage for "bodily injury" caused by an "occurrence" which was defined as an "accident." *Id.* at 220. The court reasoned that the employer's negligent hiring, retention, and supervision may be covered as an accident even though the independently tortious acts of the employee, were intentional, i.e. not accidents covered by the definition of "occurrence," under the policy. *Id.* at 223.

However, the holding and reasoning in *Liberty* does not transfer over to the issue for determination before the Court here. The Court is not dealing with whether the insured's conduct can be considered accidental even when another person acted intentionally to cause injury. The issue of whether negligent hiring can constitute an accident to meet the definition of an occurrence under a liability policy is not the same as whether an accident occurred at the site of the injury or at the location of the insured's alleged negligence. While the Reeces appear to latch on to the language in *Liberty* which states that "[u]nder California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of *the insured* for which liability is sought to be imposed on the insured[,]" *Id.* at 224-25 (citation omitted), that has no application in the context of this case. The court in *Liberty* explicitly

13

distinguished the facts of the case from facts involving an automobile accident. *Id.* at 226. In discussing

*Foremost Ins. Co. v. Eanes*, 134 Cal. App. 3d 566, 568 (1982), which dealt with the meaning of the term

"accident" in a territorial limitation clause where the insured had loaned a vehicle to friends in Orange

County but the vehicle was involved in a collision in Mexico, the *Liberty* court found the holding in that

case was "inapposite." *Liberty*, 5 Cal. 5th at 226, 228 ("we have long recognized that no all-inclusive

definition of the word 'accident' can be given. . . Context matters in this area of the law.") (citations and

internal quotation marks omitted). The court in *Foremost* concluded as a matter of "common sense" that

the accident occurred in Mexico where the collision occurred. 134 Cal. App. 3d at 571. The *Liberty* court

distinguished *Foremost* by stating "[h]ere, however, we are not concerned with *where* the accident

occurred but with *whether* there was an 'accident' within the scope of the policy language. For that

purpose, '[t]he term "accident" in the policy's coverage clause refers to the injury-producing acts of the

insured . . . .'" *Liberty*, 5 Cal. 5th at 226 (emphasis in original) (quoting *Delgado v. Interinsurance Exch.*

*of Auto. Club of S. California*, 47 Cal. 4th 302, 315 (2009)). Besides a large block quote from the *Liberty*

case, the Reeces do not provide any analysis or reasoning for how the *Liberty* holding would sensibly

transfer to the question of where an accident occurs as it pertains to a motor vehicle exclusion. The Court

finds that the Reeces have provided no reasonable basis for the Court to find that *Liberty* has applicability

to the facts of this case.

It would be a strained reading of the exception to the motor vehicle exclusion to find that the

accident did not occur on a public roadway where the golf cart collision occurred but occurred instead

where the Reeces' negligent supervision took place.[7] Accepting this argument would controvert common

sense in the same way the *Foremost* court indicated. The California Supreme Court in *Herzog v. Nat'l*

*Am. Ins. Co.*, 2 Cal. 3d 192 (1970), discussed the interplay of motor vehicle exclusions and homeowner's

insurance policies:

---

[7] The Reeces appear to assume, without providing any evidence, that their alleged negligent conduct occurred at their property.

14

Generally speaking, the personal liability provisions of a homeowner's policy bind the insurer to pay damages for which the insured shall become liable as a result of accidents in and around his home…Quite apart from its general use away from the home, [the automobile,] to the extent that it is used within the above circumscribed area it presents hazards closely associated with the home and manifestly encompassed by coverage for home-related accidents. To the extent that it is generally and normally used away from the home on streets and highways, it presents hazards not closely associated with the home, for which other insurance is customarily carried and is generally understood to afford coverage.

The reasonable expectations of the insurer in a homeowner's policy -as additionally manifested in the type of information sought upon application for such a policy and the relatively small premiums charged- clearly do not contemplate coverage for automobile-related accidents which occur beyond this limited area. Nor do the reasonable expectations of the insured contemplate that his homeowner's policy will provide such extended automobile coverage; other insurance, with a premium commensurate to the increased risks, is available for that purpose, and, as in the case at bench, is customarily obtained by the homeowner.

From the foregoing it clearly appears that neither the intent of the parties nor their reasonable expectations contemplate that the personal liability provisions of a homeowner's policy should provide coverage for automobile accidents occurring away from the immediate vicinity of the home. Thus, any construction of the policy which would provide such extended coverage would be contrary to the intent and reasonable expectations of both insurer and insured.

*Herzog*, 2 Cal. 3d at 197 (footnotes omitted).

It would stretch the ordinary language of the Policy to find that the golf cart accident occurred not at the physical site of the accident but where the Reeces' negligent conduct occurred. *See*, *e.g.*, *Iorio ex rel. Iorio v. Simone*, 340 N.J. Super. 19 (App. Div. 2001) *aff'd sub nom. Aetna Cas. & Sur. Co. v. Simone*, 170 N.J. 438 (2002) (holding there was no coverage under homeowner's policy for an occurrence or accident causing injury in an owned go-cart which takes place off the insured location and that insured's claim that his negligent supervision occurred on insured premises did not give back coverage under exception to the motor vehicle exclusion). The definition of "Motor Vehicle Liability" in the Policy explicitly excludes the exact conduct that the Underlying Action alleges the Reeces are liable for – including negligent supervision and entrustment claims. Exclusions must be viewed in the context of each specific case. *See Atl. Mut. Ins. Co. v. Ruiz*, 123 Cal. App. 4th 1197, 1203 (2004). Holding that the exception for when the accident occurs at the insured location applies in this case would strain the

15

ordinary usage of the language in the Policy and controvert the expectations of the parties when insuring risks under the homeowner's insurance policy. *See Trident Seafoods Corp. v. ACE Am. Ins. Co.*, No. C12-2265, 2013 WL 4008831, at \*2 (W.D. Wash. Aug. 2, 2013), *aff'd*, 668 F. App'x 793 (9th Cir. 2016) ("An interpretation of an insurance clause must be reasonable and take into account the purpose of the insurance at issue."). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.[8] "The auto exclusion (as well as the aircraft and watercraft exclusions) is an exclusion designed to limit coverage for risks normally covered by other insurance. To cover these risks, the insured must purchase separate insurance." *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696, 709-10, (2007), *as modified* (Aug. 27, 2007) (internal quotations marks and citation omitted). The Court finds the clear and explicit language in the Policy and the pertinent exception dictates that there is no potential for coverage for the Reeces' liability in the C.N. Action.

### b. *There Was No Concurrent Cause That Did Not Involve A Motor Vehicle*

The Reeces' briefing also relies the concept of "concurrent proximate cause" and cites two additional cases to support their argument for why the Policy should be read to provide coverage for the golf cart accident: *State Farm Mut.* Auto. *Ins. Co. v. Partridge*, 10 Cal. 3d 94 (1973) and *Gonzalez v. St. Paul Mercury Ins. Co.*, 60 Cal. App. 3d 675 (1976). ECF No. 25-1 at 16-18. Many cases involving coverage disputes in the context of auto exclusions revolve around whether the underlying action involved the "use" of an auto when there are also claims for other negligent acts in addition to the negligence in the use of an auto. *Partridge*, 10 Cal. 3d at 97. In *Partridge*, the insured had modified a pistol so that it had a "hair trigger" and the pistol discharged, injuring his passenger, when insured was driving and his car hit a bump. *Id.* at 97-98. The court found that the homeowner's policy's auto exclusion

---

[8] The Court notes that the Reeces' briefing makes no argument that the Policy language is ambiguous nor does the Court find any ambiguity. *Ruiz*, 123 Cal. App. 4th at 1203 ("policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole.")

did not exclude coverage for injuries because the negligent filing of the trigger mechanism constituted a

"concurrent proximate cause" of the accident which was covered. *Id.* at 105.

The Reeces rely on *Partridge* to argue that coverage is available under their homeowner's policy

when the accident resulted from the concurrence of a non-auto related cause, e.g. the insured's negligent

modification of the trigger mechanism of his pistol, and an auto-related cause, e.g. the insured's negligent

operation of the vehicle while holding the gun on his lap. ECF No. 25-1 at 16-18. However, in *Partridge*,

unlike here, "'[t]he excluded instrumentality did not play an active role in causing the injury.'" *Farmers*

*Ins. Exch. v. Superior Court*, 220 Cal. App. 4th 1199, 1209 (2013), *as modified on denial of reh'g* (Oct.

28, 2013) (quoting *Prince v. United Nat'l Ins. Co.*, 142 Cal. App. 4th 233, 242 (2006)). In this case the

only actions involved are auto-related—even the Reeces' negligent supervision and entrustment conduct

are all auto-related. In cases where the "injury involved no instrumentality other than the vehicle itself,

and there would have been no accident without the use or operation of the vehicle . . . courts have

generally found that the motor vehicle or relevant exclusion applies to bar coverage." *Id.* at 1209 (internal

quotation marks and citations omitted). Numerous cases have found there is no coverage when the alleged

concurrent cause also involved the motor vehicle. *See id.* at 1209-1210 (collecting cases) (granting insurer

summary judgment and finding that there was no coverage under homeowner's policy for negligent

supervision claims against grandmother who allegedly negligently supervised her granddaughter,

allowing her to be run over in the driveway when her grandfather drove him); *State Farm Fire & Cas.*

*Co. v. Estate of Evoniuk*, 681 F. Supp. 662, 664–665 (N.D. Cal. 1988) (vehicle exclusion precluded

coverage under homeowner's policy for claims of negligent supervision of insured's minor son where

insureds' minor son drove motorcycle after drinking alcohol in the presence of his mother); *see also*

*Belmonte v. Employers Ins. Co.*, 83 Cal. App. 4th 430, 434 (2000) (auto exclusion in commercial general

liability policy barred premises liability claims for negligent use of insured's premises where niece stole

van of insured who owned and operated a store and injured friend).

For the *Partridge* "concurrent causation" principle to apply to override the motor vehicle

exclusion, "[t]he liability must arise from nonvehicular conduct and must exist independently of the use or ownership of the vehicle." *Gurrola v. Great Sw. Ins. Co.*, 17 Cal. App. 4th 65, 69 (1993). No such non-auto related conduct exists here. "The conduct of the [the Reeces] in negligently entrusting the vehicle to their minor [niece] was an act separate only in the fact that it preceded the collision. This conduct cannot be disassociated from the use of the vehicle itself. Conduct which is dependent upon and related to the use of the vehicle cannot be deemed an independent act of a homeowner under the homeowner's coverage as provided in the policy." *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 527–28 (1983). The negligent supervision claims are auto-related and explicitly excluded in the Policy language. *See, e.g.*, *Farmers*, 220 Cal. App. 4th at 1211 ("the conduct of [insured] in negligently supervising the children ... was an omission separate from the use of the vehicle only in terms of time and it cannot be disassociated from the use of the vehicle itself ...."). Accordingly, *Partridge* has no applicability to the facts of this case since there is no non-auto related conduct at issue and there is no conduct at issue which could be considered an insured risk.

The Reeces lastly cite to *Gonzalez v. St. Paul Mercury Ins. Co.*, 60 Cal. App. 3d 675 (1976), which relied on the principle announced in *Partridge* to find the claims against the insured for the negligent repair of the brakes of his vehicle, which struck and killed a third-party away from the insured premises, was covered where the policy included an exclusion for "ownership, maintenance, operation, use . . . of . . . automobiles … while away from the premises…." *Id.* at 677. "This case, however, was criticized in a series of subsequent California cases." *Barge v. Jaber*, 39 F.3d 1181 (6th Cir. 1994) (collecting cases) (unpublished disposition). The Sixth Circuit also joined these California appellate courts in disapproving of *Gonzalez*. *Id.* This Court agrees that reasoning *Gonzalez* is not persuasive, and it also does not provide support for the Reeces' coverage argument. *Gonzalez* can be differentiated from negligent supervision claims with respect to a motor vehicle in that there is no other affirmative conduct with regard to the excluded instrumentality. *See Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 95 Cal. App. 3d 102, 107-08 (1979) (finding "[n]either the *Partridge* nor *Gonzalez* cases are of any solace to

18

National. Both of those cases involved affirmative independent conduct in negligently modifying the offending instrumentality" and rejecting claim that insured's negligent supervision of a nephew when he exited her car constituted non-vehicular conduct). "In short, when the events giving rise to the insured's liability are solely and indivisibly related to the use of an excluded instrumentality, coverage is precluded." *Safeco Ins. Co.*, 141 Cal. App. 3d at 530.

All the Reeces' arguments for why the exception to the motor vehicle exclusion applies are unconvincing and not well supported by the few cases they cite. "[C]overage is precluded when the exclusionary language is explicit." *Belmonte,* 83 Cal. App. 4th at 434-35. The Underlying Action alleges the Reeces were negligent in supervision and entrustment of the golf cart to their minor niece which resulted in a motor vehicle accident on a public roadway. "There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle[,]" *Nat'l Indem. Co.*, 95 Cal. App. 3d at 109, and the exclusion does not reasonably allow for a different interpretation of the exclusion and exception. The language in the motor vehicle exclusion here explicitly excludes coverage for the injury that occurred in the Underlying Action as it was related to the Reeces' alleged conduct. Therefore, there is no potential for coverage given the clear and explicit language in the Policy's motor vehicle liability exclusion.

For all the reasons above, the Court finds that Integon had no duty to defend and no duty to indemnify the Reeces in the Underlying Action under the Policy. Accordingly, the Court GRANTS Plaintiff Integon's motion for summary judgment.

**B.** **DEMAND FOR INDEPENDENT COUNSEL**

Because the Court has found that the Reeces have not proved the existence of any potential for coverage under the Policy, and thus has found Integon has no duty to defend under the Policy, the Reeces are not entitled to independent counsel in the Underlying Action.

**V. CONCLUSION AND ORDER**

For all the foregoing reasons, the Plaintiff Integon's motion for summary judgment, ECF No. 24,

is **GRANTED** and the Reeces' motion for summary judgement, ECF No. 25, is **DENIED**. The Clerk of Court is ordered to enter judgement in favor of Plaintiff Integon.

IT IS SO ORDERED.

Dated:   **November 19, 2019**          **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE